Robert T. NELSON, Plaintiff,

v.

UNIVERSITY OF TEXAS
AT DALLAS, et al.,
Defendant.

Civil Action No. 3:05–CV–1741–N.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 1, 2006.

Robert J. Wiley, Law Office of Rob Wiley, Dallas, TX, for Plaintiff.

Ruth Ruggero Hughs, Office of the Texas Attorney General, Austin, TX, for Defendant.

### ORDER

GODBEY, District Judge.

Before the Court is Defendant David E. Daniel's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6). Daniel contends Plaintiff Robert T. Nelson's claims against him in his official capacity as President of the University of Texas at Dallas ("UTD") are indistinguishable from claims against the state. Daniel therefore claims sovereign immunity. Because Nelson fails to allege a continuing federal law violation, the Court dismisses Nelson's claims pursuant to Rules 12(b)(1) & (6).

### I. ORIGINS OF DANIEL'S MOTION TO DISMISS

As set out in this Court's Order, dated August 30, 2006, Defendant UTD terminated Nelson allegedly because, following approved leave, Nelson failed to return to work and failed to notify anyone of the need for additional absences. Alleging violations of the personal leave provisions of the Family Medical Leave Act ("FMLA"), Nelson filed this action against Defendants UTD, Karen M. Jarrell, Vivian Rutlege, and David E. Daniel (collectively "Defendants"). The Court dismissed Nelson's claims against all defendants but Daniel in its August 30 Order. In Defendants' first motion to dismiss, Daniel sought dismissal in his individual capacity, but because Nelson did not sue Daniel in his individual capacity, the Court denied Daniel's motion as moot. Daniel now files this motion, arguing that Nelson's claims against Daniel in his official capacity are jurisdictionally barred.

Nelson's First Amended Complaint seeks certain economic and injunctive relief. First, Nelson seeks $630,000 for lost benefits as a result of Defendants' alleged violation of FMLA. However, in his response to this motion, Nelson contends his claim against Daniel is not a claim for monetary damages. Rather, pursuant to *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), Nelson seeks injunctive relief, including hiring, reinstatement, and/or promotion. Because Nelson fails to allege a continuing violation of federal law, the Court dismisses Nelson's claims against Daniel in his official capacity pursuant to Rules 12(b)(1) and 12(b)(6).

### II. MOTION TO DISMISS STANDARDS

█ Rule 12(b)(1) allows motion to dismiss for "lack of jurisdiction over the subject matter." FED.R.CIV.P. 12(b)(1). Whenever it appears by suggestion of the parties or otherwise that a court lacks jurisdiction over an action's subject matter, the court must dismiss the action. FED.R.CIV.P. 12(h)(3). The court should not grant dismissal unless it appears certain that there is no set of circumstances that would entitle the plaintiff to relief. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir.1992).

█ Rule 12(b)(6) allows a motion to dismiss for "failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). When considering such a motion, the Court must take all facts pled in the complaint as true and only grant the motion if "it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, "a plaintiff must plead specific facts, not mere conclusory allegations," and "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Collins*, 224 F.3d at 498 (5th Cir.2000); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995).

### III. NELSON FAILS TO ALLEGE A CONTINUING VIOLATION OF FEDERAL LAW

 It is well established that the Eleventh Amendment prohibits federal courts from exercising jurisdiction over suits against nonconsenting states. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71, 109 S.Ct. 2304, 105 L.Ed.2d 45, (1989); *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir.1996). Additionally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and thus the state. *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 414 (5th Cir.2004) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45(1989)). However, the Eleventh Amendment's proscription is not absolute.

 In addition to Congress's ability to abrogate states' sovereign immunity,[1] the Supreme Court has carved out an exception to the Eleventh Amendment that ensures judicial review of state action. "Under *Ex parte Young*, 'a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law.'" *McCarthy v. Hawkins*, 381 F.3d 407, 412 (5th Cir.2004) (quoting *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)). The theory behind *Ex parte Young*, according to the Supreme Court, is that "use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of . . . the State in its sovereign or governmental capacity." *Ex parte Young*, 209 U.S. at 159–60, 28 S.Ct. 441. In other words, "[t]he State has no power to impart to [an officer engaging in unlawful conduct] immunity from responsibility to the supreme authority of the United States." *Id.*

 However, *Ex parte Young's* exception to the Eleventh Amendment is limited. As the Supreme Court explained, the exception applies only when (1) the suit is against a *state official* and (2) the plaintiff seeks only prospective injunctive relief (3) in order to end a "continuing violation of federal law." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (citations omitted). "Where Congress has prescribed a detailed remedial scheme for the enforcement of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action

---

1. Despite the Eleventh Amendment's general jurisdictional bar, Congress may abrogate states' sovereign immunity pursuant Section 5 of the Fourteenth Amendment. *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 726, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003) ("Congress may, however, abrogate such immunity in federal court if it makes its intention to abrogate unmistakably clear in the language of [a] statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment."). Abrogation of a state's sovereign immunity is effective only when Congress "(1) unequivocally expresses its intent to do so and (2) acts pursuant to a valid grant of constitutional authority." *Bryant v. Miss. State Univ.*, 329 F.Supp.2d 818, 823 (N.D.Miss.2004).

against a state officer based upon *Ex parte Young.*" *Id.* at 74, 116 S.Ct. 1114.

Daniel contends Nelson's *Ex parte Young* claim is barred for three reasons. First, Daniel argues that because Congress did not validly abrogate states' sovereign immunity under FMLA's self care provision, *Ex parte Young* does not apply. Next, Daniel argues that Congress has prescribed a remedial scheme for the enforcement against a state of a statutorily created right, and the Court should therefore hesitate before casting aside those limitations and permitting an action based upon *Ex parte Young.* Finally, Daniel argues that, even if *Ex parte Young* does apply, Nelson failed to allege a continuing federal law violation. The Court addresses each argument in turn.

First, Congress's failure validly to abrogate states' sovereign immunity [2] has no bearing on a plaintiff's *Ex parte Young* claim. As mentioned above, *Ex parte Young* ensures judicial review of allegedly illegal state action *notwithstanding* the Eleventh Amendment's proscription. *Seminole Tribe,* 517 U.S. at 54, 116 S.Ct. 1114. The Supreme Court explained that because "the State has no power to impart to [an official] any immunity from responsibility to the supreme authority of the United States," an official's illegal acts are stripped of state authority, rendering the Eleventh Amendment's jurisdictional bar moot. *Ex parte Young,* 209 U.S. at 160, 28 S.Ct. 441. In fact, Congress's failure validly to abrogate the Eleventh Amendment's immunity actually strengthens the

case for an *Ex parte Young* claim, because *Ex parte Young* allows for judicial review of allegedly illegal state action where review is otherwise jurisdictionally barred. Accordingly, Congress's failure validly to abrogate states' sovereign immunity under FMLA's self care provision does not, by itself, bar Nelson's suit against Daniel in his official capacity for injunctive relief.[3]

Daniel also fails to show that, through 29 U.S.C. § 2616, Congress "manifest[ed] an intent to exclude *Ex parte Young* suits." *AT&T Comm. v. BellSouth Telecommunications, Inc.,* 238 F.3d 636, 648 (5th Cir.2001). Daniel argues that, similar to the statute at issue in *Seminole Tribe,* the FMLA provides a remedial scheme that severely limits the relief available to an aggrieved party and thus precludes an *Ex parte Young* claim. In determining whether a prescribed remedial scheme precludes an *Ex parte Young* claim, the Supreme Court's roadmap "directs [the Court] to pay particular attention to comprehensiveness, that is, statutory detail and intricacy, as [an] indication of congressional intent as it pertains to the *Ex parte Young* exception." *Rosie D. ex rel. John D. v. Swift,* 310 F.3d 230, 236 (1st Cir.2002) (comparing *Seminole Tribe,* 517 U.S. at 74, 116 S.Ct. 1114 to *Verizon Maryland, Inc., v. Public Service Com'n of Maryland,* 535 U.S. 635, 646–47, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)). In *Seminole Tribe,* the Court reasoned that *Ex parte Young* was unavailable because the Indian Gaming Regulatory Act ("IGRA") "included a 'carefully crafted and intricate remedial scheme' that greatly circum-

**2.** *See* August 29, 2006, Order at 3–5 (holding that Congress did not validly abrogate the states' sovereign immunity with respect to the self care provision of the FMLA).

**3.** Daniel cites *Seminole Tribe* for the proposition that "relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." *Seminole Tribe,* 517 U.S. at 58, 116 S.Ct.

1114. However, the Supreme Court was not saying that the type of relief sought is irrelevant to an *Ex parte Young* claim, but rather that "the type of relief sought is irrelevant to the whether Congress has the power to abrogate States' immunity" under Section 5. *Id.* The type of relief sought is central to an *Ex parte Young* claim.

scribed the powers of the federal district court in cases arising under the statute's provisions." *Missouri Child Care Assoc. v. Cross,* 294 F.3d 1034, 1038 (8th Cir.2002) (quoting *Seminole Tribe,* 517 U.S. at 73–76, 116 S.Ct. 1114). Here, with no great detail or intricacy, section 2616 merely confers investigative authority to the Secretary of Labor. Section 2616 does not limit the Court's authority and makes no indication whatever that Congress intended to exclude *Ex parte Young* suits under the FMLA. Thus, section 2616 does not preclude Nelson's claim against Daniel in his official capacity.

 Despite clearing the first two *Ex parte Young* hurdles, Nelson ultimately fails to allege a continued federal law violation. Nelson alleges that Daniel's refusal to reinstate Nelson after terminating him in violation of FMLA constitutes a "continued violation of federal law," citing *Montgomery v. Maryland,* 266 F.3d 334 (4th Cir.2001). In *Montgomery,* the plaintiff sued for injunctive relief, claiming that, following FMLA leave, she had been reinstated to a different and nonequivalent position.[4] The Fourth Circuit allowed the plaintiff's claim to proceed on the grounds that an allegation of continued employment in a position not equivalent in "benefits, pay, and other terms of conditions of employment" constituted a adequate allegation of a continued violation of federal law. *Id.* at 341 (quoting 29 U.S.C. § 2614(a)(1)(A)-(B)). Nelson's claim is markedly different. Whereas the plaintiff in *Montgomery* alleged wrongful conduct in the form of continued wrongful employment, here the alleged wrongful conduct was Nelson's termination, a one-time event. Daniel's failure to reinstate Nelson is simply a failure to remedy the alleged

wrong, not a continuing violation of federal law. If Nelson's argument were correct, any claim of a discrete wrongful act could be transformed into an *Ex parte Young* claim through the simple expedient of alleging a continuing wrongful failure to provide a remedy. In determining whether a plaintiff alleges a continuing federal law violation, a court should look to the right at issue. Here the right allegedly was violated in a one-time event: Nelson's termination. "Mere conjecture is insufficient to transform a one-time event into a continuing governmental practice...." *DeBauche v. Trani,* 191 F.3d 499, 505 (4th Cir.1999). Thus, Nelson fails to meet his *Ex parte Young* burden, and his claims against Daniel in his official capacity are barred by the Eleventh Amendment. Accordingly, the Court dismisses Nelson's claims against Daniel in his official capacity under Rules 12(b)(1) and 12(b)(6).

---

4. "The FMLA requires employers to restore an employee returning from FMLA leave to either the same position or 'an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.'" *Montgomery,* 266 F.3d at 341 (quoting 29 U.S.C. § 2614(a)(1)(A)-(B)).